# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. H. R. FARGO, Minor.

UNPUBLISHED
June 14, 2018

No. 340227; 341205
Mason Circuit Court
Family Division
LC No. 15-000071-NA

Before: MURRAY, C.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

In Docket No. 340227, respondent-father appeals by right the trial court order terminating his parental rights to the minor child, HF, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist); (c)(*ii*) (failure to rectify other conditions); (g) (failure to provide proper care and custody); (h) (imprisoned for a period exceeding two years); and (j) (reasonable likelihood that child will be harmed if returned to the parent). In Docket No. 341205, respondent-mother appeals by right the trial court order terminating her parental rights to HF pursuant to MCL 712A.19b(3)(c)(*i*) and (*ii*), (g) and (j). We affirm in both appeals.

## I. STANDARD OF REVIEW

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). Similarly, this Court reviews a trial court's decision regarding reasonable efforts for clear error. *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012). We will determine a finding of fact is clearly erroneous if, after giving due regard to the trial court's special opportunity to observe the witnesses, MCR 2.613(C), we have a definite and firm conviction that a mistake has been committed. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

## II. DOCKET NO. 340227

Father argues that the trial court erred in finding that the Department of Health and Human Services (DHHS), made reasonable efforts at reunification, erred in finding grounds for termination, and erred in finding that termination of his parental rights was in HF's best interests.

### A. REASONABLE EFFORTS

-1-

"In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). In challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

In this case, the DHHS created a treatment plan. Father's barriers to reunification pertained to emotional stability, housing, resources, substance abuse, and parenting skills. Father did not overcome any of these barriers. At the outset of the proceedings and at the time of termination, father was incarcerated. While he obtained a psychological evaluation, he did not obtain housing, employment, or counseling. In addition, father absconded with HF during an unsupervised parenting session resulting in his being charged with a felony. Further, shortly before the court terminated his parental rights, father was sentenced to 18 to 40 years' imprisonment. He fails to articulate what additional services the DHHS should have offered him, or how additional services would have benefited his efforts at reunification. In short, the trial court did not clearly err in finding that the DHHS made reasonable efforts at reunification.

## B. STATUTORY GROUNDS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court found clear and convincing evidence to terminate father's parental rights, in part,[1] pursuant to MCL 712A.19b(3)(c)(*i*) and (h), which provide:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

---

[1] The trial court also found grounds for termination under MCL 712A.19b(3)(c)(*ii*), (g), and (j). However, because we conclude that the trial court did not clearly err by finding at least one statutory ground for termination, we need not address those additional grounds. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

(h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [MCL 712A.19b(3).]

The trial court did not clearly err in finding clear and convincing evidence to terminate father's parental rights pursuant to MCL 712A.19b(3)(c)(*i*). Father does not dispute that 182 days lapsed from the time the trial court entered the initial dispositional order to the time that the trial court terminated his parental rights. The conditions that led to the adjudication included father's incarceration, lack of suitable housing, lack of resources, emotional instability, and lack of parenting skills. None of these conditions were rectified, and there was no evidence to support that father could rectify these conditions within a reasonable amount of time considering HF's young age. Specifically, father took HF to Alabama and was residing in a camper in a field. To avoid protective services in that state, father sent the child back to Michigan in the care of a friend while he remained in Alabama. Father then did not have contact with HF for months. Father was incarcerated and then released for a short time. According to Johanna Bisard, a foster-care specialist, father did not obtain suitable housing or legal employment while he was released. And, although he underwent a psychological evaluation, there was no proof of counseling or other improvement with respect to emotional stability. Instead, father committed a felony offense when he absconded with HF and failed to return her at the end of an unsupervised parenting-time visit. Furthermore, father had an extensive criminal record, and he showed no ability to conform his behavior to the law. Instead, father pleaded guilty to two additional felony offenses, and he was sentenced as a fourth-offense habitual offender to a minimum 18-year prison sentence. On this record, the trial court did not clearly err in finding clear and convincing evidence to support termination under MCL 712A.19b(3)(c)(*i*).

Similarly, the trial court did not clearly err in finding grounds for termination under MCL 712.19b(3)(h). Father was sentenced to 18 to 40 years' imprisonment, which will encompass at least all of HF's childhood. Before his imprisonment, father failed to provide for the proper care and custody of HF. He instead left her in the care of a friend and family member in Michigan. He did not overcome any of the barriers to reunification when he was released for a short time during the proceedings. Furthermore, given father's prison sentence, there is no reasonable likelihood that he will be able to provide for the proper care and custody of HF considering her age.

## C. BEST INTERESTS

In addition to properly finding grounds for termination, the trial court did not clearly err in finding that termination of father's parental rights was in HF's best interests.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. In considering best interests, the focus is on the child rather than the parent. *Id.* at 87. A trial court may consider such factors as "the child's bond to the parent, the parent's parenting

-3-

ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). A trial court may also consider the duration that a child has lived with a foster family and whether "the child could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App at 248-249.

In this case, the trial court did not clearly err in finding that termination of father's parental rights was in HF's best interests. Father failed to provide proper care and custody of HF when she was in his custody. Father brought HF to Alabama and was living in a camper in a field. Bisard testified that father did not secure suitable housing for HF, and he did not exhibit an ability to provide financially for HF or to provide the stability or permanency that HF needed. Father was sentenced to a lengthy prison sentence, and he will be incarcerated for all of HF's childhood. Bisard testified that HF did not experience any negative effects after her contact with father ended, showing that she did not have a strong bond with him. In contrast, HF lived with her custodial family for an extended period, and Bisard testified that she was thriving in that environment and that the custodial parents wanted to adopt her. It was apparent that adoption would provide the stability, permanency, and finality that HF needed. The trial court did not clearly err in finding that termination was in HF's best interests.

### III. DOCKET NO. 341205

Mother argues that the trial court erred in finding that the DHHS made reasonable efforts at reunification,[2] that the trial court erred in finding statutory grounds for termination, and in finding that termination of her parental rights was in HF's best interests.

### A. REASONABLE EFFORTS

The Michigan Supreme Court has explained that under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, " 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination . . . .' " *In re Hicks/Brown*, 500 Mich at 86, quoting 42 USC 12132. Therefore, in a termination proceeding the DHHS must make " 'reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would fundamentally alter . . . the service' provided." *Id.*, quoting 28 CFR 35.130(b)(7). The Court explained that unless the DHHS makes reasonable modifications to the services or programs offered to a disabled parent, it has failed in its duty under the ADA to reasonably accommodate a disability. *Id.* at 86. Once the DHHS knows of a parent's disability, the DHHS has an affirmative duty to make reasonable efforts at reunification; the DHHS could not be passive regarding providing accommodations. *Id.* at 87-88.

---

[2] Respondent-mother failed to raise the reasonable efforts issue in her statement of issues presented; nevertheless, we have addressed this argument.

In this case, the trial court found that the DHHS tailored its efforts to accommodate mother's cognitive disability, providing parent mentors that worked specifically with mother to help her overcome her disability. The trial court also noted that the DHHS obtained a neuropsychological evaluation for mother. The trial court did not clearly err in finding that the DHHS made reasonable efforts that were tailored to accommodate mother's disability.

Early in this case, the DHHS identified mother's cognitive impairment and attempted to tailor the services to accommodate the disability. For example, at a June 16, 2016 dispositional review hearing, Bisard testified that mother's progress would take longer than normal because of her cognitive impairment. In addition, the DHHS arranged for mother to undergo a psychological evaluation and then a subsequent neuropsychological evaluation with Dr. Craig VanderMaas, who specialized in working with traumatic brain injuries. Furthermore, the DHHS arranged for mother to work with two parent mentors. Angela Whipple, a parent mentor, testified, and her testimony supported that she attempted to tailor her coaching to meet mother's needs, taking extra time to explain things and help mother. The DHHS also provided mother with transportation services, arranged supervised parenting time, and provided mother with lists of potential counselors and rental housing. Still, there was no evidence to show that mother benefited from these services. Whipple testified that mother did not make any progress in the parent-mentor program, and in their reports, three mental health professionals indicated that mother was impaired and did not have the ability to parent a child on her own.

Moreover, unlike in *Hicks/Brown*, in this case, mother does not identify any services that would have benefited her to the extent that reunification would have been a possibility. See *Hicks/Brown*, 500 Mich at 89-90; see also *In re Fried*, 266 Mich App at 542-543.

Mother argues that the DHHS failed to assist her in obtaining the counseling services that she needed. Mother points to Dr. Joseph Auffrey's psychological evaluation in which he indicated that mother needed two years of therapy and parenting classes to mitigate the potential risk to a child being placed in mother's care.

Contrary to mother's argument, the DHHS did offer services Dr. Auffrey suggested. Although the parent mentoring services did not continue for two years, mother worked with Whipple for approximately six months-- from January to June 2017. Before that, mother worked with another parent mentor from approximately January to September 2016. Whipple testified that mother did not make any progress at overcoming barriers, and she did not advance past the first phase of the parent-mentor program. Moreover, after Dr. Auffrey performed an evaluation, Dr. VanderMaas, who specialized in traumatic brain injury, performed a neuropsychological evaluation. He concluded that mother was incapable of independently parenting. Dr. VanderMaas testified that there was no level of intervention that would remedy mother's deficiencies and that she would need someone present who was "hands on" to help her parent. On this record, unlike in *Hicks/Brown*, mother has not shown that the DHHS failed to tailor services to meet her disability. Therefore, the trial court did not clearly err in finding that the DHHS made reasonable efforts at reunification.

## B. STATUTORY GROUNDS

To terminate parental rights, the trial court must find that at least one of the statutory grounds in MCL 712A.19b(3) has been proved by clear and convincing evidence. *In re VanDalen*, 293 Mich App at 139. The trial court found clear and convincing evidence to terminate mother's parental rights, in part,[3] pursuant to the following statutory provision:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. [MCL 712A.19b(3).]

The trial court did not clearly err in finding grounds for termination under MCL 712A.19b(3)(c)(*i*). In this case, the conditions that led to the adjudication included intellectual capacity, domestic relations, housing, and employment. Mother did not overcome any of these barriers, and there was no evidence to support that she would be able to overcome these barriers within a reasonable amount of time considering HF's age; she also does not dispute that over 182 days had elapsed since the trial court issued the initial dispositional order. As discussed, mother did not make any improvement with her parenting ability after working with two parent mentors. Whipple testified about mother's significant deficiencies; she was unable to do basic things needed to safely parent a child. Mother was unable to incorporate Whipple's advice into her behavior, which supported that she would not be able to independently parent HF within a reasonable amount of time. Similarly, Michelle Hubbard, a parenting-time coordinator, testified that mother was not capable of parenting HF on her own. Bisard also testified that mother showed no signs of improvement. Mother also failed to obtain housing and her need for a structured environment suggested that she was incapable of living on her own. Furthermore, mother did not show good judgment with respect to domestic relationships. Finally, mental evaluations showed that mother was incapable of independently parenting a child and that there was no level of intervention that would remedy this deficiency. On this record, the trial court did not clearly err in finding grounds for termination under MCL 712A.19b(3)(c)(*i*).

## C. BEST INTERESTS

In this case, the trial court did not clearly err in finding that termination of mother's parental rights was in HF's best interests. The record showed that mother had a significant impairment and was unable to independently parent a child. She worked with a parent mentor for an extended period and did not make any progress. The testimony of the case workers showed that mother was unable to care for a child on her own. Moreover, Hubbard testified that HF did not have a significant bond with mother. Mother was unable to incorporate direction and advice offered to her, and there was a risk that HF would be unintentionally harmed if placed in

---

[3] As with father, the trial court found additional grounds for termination of mother's parental rights. But we need not consider them here. See *In re HRC*, 286 Mich App at 461.

mother's care. The mental health professionals prepared reports that indicated mother was incapable of parenting a child, and Dr. VanderMaas testified that mother was not able to parent a child and that there was no amount of intervention would rectify her barriers. In contrast, HF was thriving in her foster home, and the foster parents were willing to adopt. It was clear that the foster family could provide HF with the long-term stability, care, and security that she needed, and that mother could not. See *In re Olive/Metts*, 297 Mich App at 41-42. On this record, the trial court did not clearly err in finding that termination was in HF's best interests. *Id*. at 40.

We affirm.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jonathan Tukel